**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NICOLE E. SIERRA,

                              Plaintiff,

           - v -                                     Civ. No. 1:11-CV-0088
                                                                  (RFT)

MICHAEL J. ASTRUE, *Commissioner of Social Security*,

                              Defendant.

**APPEARANCES:**                                   **OF COUNSEL:**

BUCKLEY, MENDELSON LAW FIRM           IRA MENDLESON, III, ESQ.
Attorney for Plaintiff
29 Wards Lane
Albany, New York 12204

SOCIAL SECURITY ADMINISTRATION         DAVID L. BROWN, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**[1]

In this action, Plaintiff Nicole Sierra moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Period of Disability (POD) and Disability Insurance Benefits (DIB).[2] Based upon the following discussion, the Commissioner's decision denying Social Security benefits is **reversed** and this case is **remanded** back to the Social

---

[1] On November 21, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 11.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 8 & 9.

Security Administration (SSA) for further development of the record.

## I. BACKGROUND

Sierra, born on April 6, 1975, filed an application for POD and DIB on May 25, 2007, claiming an inability to work as of May 2, 2007, due to rheumatoid arthritis and fibromyalgia. Dkt. No. 6, Admin. Transcript [hereinafter "Tr."] at pp. 27 & 81-87. Prior to that, Sierra had been employed as a file clerk and an administrative assistant. *Id*. at pp. 28, 112, & 174. The disability application was denied on initial review and on reconsideration. *Id*. at pp. 37, 38, 39-42, & 43-45. On September 15, 2009, a Hearing was held before Administrative Law Judge (ALJ) Thomas Grabeel (Tr. at pp. 23-36), who, on September 25, 2009, issued an unfavorable decision finding that Sierra was not disabled (Tr. at pp. 7-22). On January 13, 2011, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1-5. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability

to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous lines of work (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Grabeel's Findings

Sierra was the only witness to testify at the Hearing. Tr. at pp. 23-36. In addition to such testimony, the ALJ had Sierra's medical records consisting of treatment reports and opinions from various treating and/or examining physicians. *Id.* at pp. 129-321.

Using the five-step disability evaluation, ALJ Grabeel found that: 1) Sierra had not engaged in any substantial gainful activity since May 2, 2007, the alleged onset disability date; 2) she has severe medically determinable impairments, namely rheumatoid arthritis and fibromyalgia; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retains the RFC to perform the full range of sedentary work as defined by 20 C.F.R. § 404.1567(a), and could therefore return to her previous employment as an administrative assistant. *Id.* at pp. 7-22.

In making his RFC assessment, the ALJ gave little weight to the medical opinions rendered by Sierra's physicians, L. Frank Cavaliere, M.D., and Susan Levine, M.D., while giving controlling weight to the opinions rendered by the state agency, non-examining medical consultants. *Id*. at pp. 15-16. The ALJ also assessed that Plaintiff's statements concerning the symptoms she experiences were credible, but her statements with regard to the intensity, persistence, and limiting effects of these symptoms were not credible. *Id*. at pp. 13-15. Plaintiff contends that the ALJ's decision denying benefits should be reversed because the ALJ (1) erroneously determined her RFC as capable of performing sedentary work; (2) failed to properly apply the treating physician rule; and (3) improperly evaluated Plaintiff's credibility. *See generally* Pl.'s Br. Because each of these contentions relate to the

ALJ's assessment of Plaintiff's RFC, we consider them together.

### D. Plaintiff's RFC

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a). If the applicant can perform the kind of work he or she performed in the past, they are deemed not disabled. *Id*. at § 404.1520(e). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a)(3).

ALJ Grabeel determined that Plaintiff had the RFC to perform the full range of sedentary work as defined by the Regulations, which states:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

In rendering the RFC assessment, the ALJ did not provide a function-by-function assessment of Plaintiff's ability to perform all of the exertional requirements of sedentary work, or more specifically, he failed to determine Plaintiff's ability to sit, stand, walk, lift, and carry. This was an error. *See* 20 C.F.R. § 404.1545(b); Social Security Ruling 96-8p, 1996 WL 374184, at *3, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996) (noting that the RFC must first be evaluated on a function-by-function basis before expressed in terms of the exertional levels of sedentary, light, medium, heavy, and very heavy). Furthermore, it is well-

settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7. Although the ALJ performed an analysis of the medical evidence and opinions, his failure to clearly identify the precise limitations of function makes it difficult for the Court to assess whether the RFC assessment is supported by substantial evidence.

Therefore, we find that in failing to render a function-by-function analysis, the ALJ applied an incorrect legal standard, thus warranting a remand. Despite this finding, our analysis of the RFC will continue because other claimed errors could have an impact on further proceedings.

As noted above, in making the RFC determination, the ALJ gave little weight to the opinions rendered by Plaintiff's physicians, while giving controlling weight to the opinion of the state agency, non-examining consultants. Plaintiff asserts that such analysis violates the Treating Physician Rule; we hold that it does not.

The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Treating Physician Rule recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time nonexamining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

If the treating physician's opinion is not given controlling weight, the weight to be afforded to the opinion is to be based on several factors, which include: (1) the length, nature and extent of the treatment relationship, including the frequency of examination; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the medical opinion with the medical record as a whole; (4) whether the treating physician is a specialist; and (5) any other relevant factors that tend to support or contradict the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2) (cited in *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998)).

The record contains two separate opinions from two of Plaintiff's physicians: Dr. Cavaliere, a rheumatologist (Tr. at pp. 282-83), and Dr. Levine, who is board certified in infectious diseases (Tr. at pp. 284-85 & 321).

First, with regard to Dr. Cavaliere, it is not entirely evident that Dr. Cavaliere should be entitled to the benefit of the Treating Physician Rule because it is not clear that there is an established treatment relationship. A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)). Plaintiff asserts that she has been seeking regular treatment from Dr. Cavaliere since November 2007. Pl.'s Br. at p. 8. However, aside from the disability evaluation, dated November 7, 2008, the record only contains two treatment notes from Dr. Cavaliere, one dated December 23, 2008, the other dated March 19, 2009. Tr. at pp. 295-97. Furthermore, the opinion rendered by Dr. Cavaliere is not supported by the medical record. In his disability evaluation, Dr. Cavaliere opined that Sierra was moderately limited in her ability to walk,

stand, and sit, and very limited in her ability to lift, carry, push, pull, bend, see, hear, speak, use hands, and climb stairs. *Id*. at p. 282. However, nothing in the record supports the contention that Sierra is limited in her abilities to see, hear, or speak. Dr. Cavaliere further opined that he is unsure whether the restrictions he set would last longer than ninety days and whether she is unable to be employed. *Id*. at p. 283. Yet, in his treatment notes, Dr. Cavaliere states that Sierra's rheumatoid arthritis is well maintained. In light of the fact that Dr. Cavaliere's functional assessment is unsupported and, in some instances, contradicted by the record, we hold that the ALJ did not err when he accorded little weight to Dr. Cavaliere's assessment.

With regard to Dr. Levine, the record reflects that Plaintiff began treating with Dr. Levine in 2004, but ceased her visits upon moving to Florida, where she was treated by Sash S. Seshadri, M.D. Upon her return to New York in 2008, Plaintiff resumed her care with Dr. Levine. In March 2008, Dr. Levine stated that Plaintiff suffered from chronic fatigue syndrome and fibromyalgia and, based on the "longevity of her symptoms, their lack of response to aggressive treatment and on the known natural history of these disorders, [Sierra] remains completely disabled for an indefinite period of time." *Id*. at p. 281. In opining on Sierra's functional limitations, Dr. Levine stated that Sierra was very limited in her ability to walk, stand, sit, lift, carry, push, pull, bend, see, hear, speak, understand and remember instructions, carry out instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior without exhibiting behavior extremes. *Id*. at p. 284. As with Dr. Cavaliere's assessment, Dr. Levine opines on matters that have no support in the record, and, with regard to mental limitations, may possibly be beyond her realm of expertise. In fact, there is nothing in the record to support the mental functioning limitations posited by Dr. Levine. Furthermore, as the ALJ noted, Dr. Levine's stated restrictions conflict with

Plaintiff's testimony regarding her daily activities, such as being able to drive and attend her son's football practice. *Id*. at p. 33. In fact, Dr. Levine imposes greater restrictions on Plaintiff than Plaintiff's own testimony reflects, as evidenced by Plaintiff's subjective assessment of how much she can lift and how long she can endure standing, walking, and sitting. *Id*. at pp. 31-34. Thus, we similarly find that the ALJ did not commit any error in failing to accord Dr. Levine's assessment controlling weight, and he properly applied the Treating Physician Rule when he explained what weight he would accord the opinion and why.

Lastly, with regard to opinion evidence, Plaintiff asserts that the ALJ erroneously gave controlling weight to the opinions of the two non-examining, state agency consultants. Plaintiff's primary objection, aside from the fact that she was never examined by these consultants, is the fact that these functional limitation assessments were based upon a medical record which, at the time of agency review, did not include the opinions of Drs. Cavaliere and Levine. First, with regard to the timing of state agency opinions, we note that much of the medical record was completed at the time these opinions were rendered in June and September 2007, respectively. Contrary to Plaintiff's assertion, the medical record was fully established with regard to her severe impairments – rheumatoid arthritis and fibromyalgia. Prior to this date, Plaintiff had been treated regularly by Dr. Seshadri, and her conditions, or rather complaints, appear to not have worsened overall by the time she came under the treatment of Dr. Cavaliere or when she renewed her treatment with Dr. Levine. Thus, the argument that the state agency, non-examining consultants had no opportunity to review a full medical history is not accurate. In any event, the ALJ had the opportunity to review a complete medical record, which included the treatment notes and medical opinions from Drs. Cavaliere and Levine.

Next, we note that, contrary to Plaintiff's supposition, the opinion of state agency consultants

may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record. *See* 20 C.F.R. §§ 404.1527(e) *see also Brunson v. Barnhart*, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (noting that the opinions of non-examining sources may be considered provided they are supported by evidence in the record). Having discounted the opinions rendered by Sierra's physicians, the ALJ was obligated to review the only other medical opinions in the record, those provided by Sunita Patel, M.D., a radiologist, and by Pamela Hager, whose credentials are unknown. The ALJ is further obligated to explain what weight, if any, would be accorded thereto.

On June 25, 2007, and September 11, 2007, Hager and Patel, respectively, determined that Sierra had the following limitations: She could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk (with normal breaks) a total of at least two hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; was unlimited in her ability to push and/or pull; had no postural limitations; no manipulative limitations; no visual limitations; no communicative limitations; and no environmental limitations. Tr. at pp. 263-70 & 271-78. In assessing these opinions, ALJ Grabeel noted that these opinions lent support to his RFC assessment, and, furthermore, "[a]lthough those physicians were non-examining, their opinions are supported by the lack of objective clinical findings, the claimant's complaints from treatment records and other evidence of the claimant's actual functioning." *Id*. at p. 16. The ALJ's legal error was not in relying upon these non-examining physicians' opinions *per se*, but in the fact that he failed to provide his own function-by-function assessment of Plaintiff's RFC and identify where such support resides in the record, aside, that is, from the agency opinions. He merely claims to adopt the agency opinions because they relied on the medical record, as if that would suffice in meeting his obligation to provide a more detailed account of Plaintiff's RFC.

Lastly, we address Plaintiff's claims regarding the ALJ's credibility assessment of her statements pertaining to her symptoms and the limiting effects thereof. Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. 20 C.F.R. § 404.1529(a) & (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id.* at § 404.1529(c)(4). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* at § 404.1529(c). "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In his decision, ALJ Grabeel states that Plaintiff's testimony concerning her symptoms was credible, but her statements regarding limitations were not. Tr. at pp. 14-15. The ALJ summarized Plaintiff's subjective complaints as follows:

> She indicated that she was always in pain and suffered from fatigue. She reported an inability to lift and carry things and stated that sitting and standing was a major problem because of her medical condition . . . . [S]he testified that she has constant pain, every day. She lies down a lot. She has arthritis and fibromyalgia that affects the neck, back, and hips. She testified that she can walk for 10 to 15 minutes. She can stand for less than 30 minute[s]. [Sh]e can sit for one hour before her hips burn.

*Id*. at p. 14.

These subjective complaints were then summarily discounted because they were inconsistent with his non-specific RFC assessment. In reviewing the record, as with the ALJ's RFC assessment, we find that substantial evidence does not support this credibility assessment.

Plaintiff complains of various symptoms, including pain, fatigue, aches, swelling, stiffness, and disrupted sleep, to name a few. She testified that she experiences pain every day and that it interferes with her sleep and prevents her from being comfortable at any point in the day. She cannot stand for more than thirty minutes, nor sit for more than one hour because of the pain and/or burning she experiences. She does not help much with the household chores, and instead gets help from her

*-13-*

children, husband, and parents. Complaints such as these are replete throughout the medical record. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186, at *5, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Clams: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996). Nothing in the record refutes Plaintiff's testimony regarding her limited ability to do even the most basic work activities, and although it was reported that her rheumatoid arthritis was under control, she continues to experience pain, notwithstanding efforts to curtail her pain through medication, which have proven unsuccessful. As the Second Circuit has stated, "[p]ain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings. *Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir. 1983). This is especially so with individuals with fibromyalgia. In cases dealing with fibromyalgia, "the credibility of the claimant's testimony regarding [his] symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence[.]" *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). In cases of fibromyalgia, "physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d at 108-09 (quoting *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 45). Thus, the Second Circuit has noted that "the absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Id.* at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Accordingly, negative findings in the medical records "simply confirm a diagnosis of fibromyalgia by a process of exclusion,

eliminating 'other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.'" *Id.* (quoting *Preston v. Sec'y of Dep't of Health and Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988)).

The ALJ acknowledged that Sierra's medically determinable impairments could reasonably cause the symptoms she reports. Yet, the ALJ did not point to any medical evidence to sustain his unsupported presumption that Plaintiff exaggerated the limiting effects her symptoms have on her ability to perform daily work activities. Nor did the ALJ go through the appropriate factor analysis, noted above, in evaluating the credibility of Plaintiff's statements regarding persistence and intensity of her symptoms. In essence, the ALJ discounted Plaintiff's credibility regarding the limiting effects of her symptoms simply because they do not comport with his own non-specific RFC assessment.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Sierra was not disabled, the ALJ failed to apply the correct legal standards. Thus, this Court cannot uphold the ALJ's decision.

In determining the final disposition of this matter, the most equitable judgment must be implemented. The Court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d at 82-83). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker v. Harris*, 626 F.2d at 235; *see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Where, however, the reversal 'is

based solely on the [Commissioner's] failure toسtain her burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in sedentary work is not supported by substantial evidence, no purpose would be served by [the court] remanding the case for rehearing." (citing *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (alterations in original)); *Rosa v. Callahan*, 168 F.3d at 83 (remand solely for calculation of benefits is warranted when the court has no "apparent basis to conclude that a more complete record might support the Commissioner's decision"); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992).

"Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally . . . remand the matter to the Commissioner for further consideration." *Curry v. Apfel*, 209 F.3d at 124 (citation omitted). Accordingly, because the ALJ failed to adequately develop the record in reaching a determination of Plaintiff's RFC, the Court need not – indeed, cannot – reach the question of whether the Commissioner's determination at Step Four and subsequent denial of benefits was based on substantial evidence. Thus, the case should be remanded to the Commissioner to further develop the record. Upon remand, the Court directs the ALJ to state a function-by-function assessment of Sierra's RFC and, if necessary, revisit the medical opinions in the record. The same is true for assessing Plaintiff's credibility regarding her symptoms and the effect such have on her ability to perform basic work activities.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: September 28, 2012
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge